**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BARRY L. SCHNEIDER and ALLISON M. SCHNEIDER,**<br><br>*Plaintiffs*,<br><br>*v.*<br><br>**WELLS FARGO BANK, N.A.,**<br><br>*Defendant.* | **Civil Action No. __________**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Barry L. Schneider and Allison M. Schneider, appearing pro se, allege as follows:

## I. NATURE OF THE ACTION

1. This action concerns mortgage-servicing conduct by Wells Fargo Bank, N.A. during 2026 concerning mortgage loan 0533185088 and the residential property at 6 Barnsdale Drive, East Windsor, New Jersey.

2. Plaintiffs do not ask this Court to review, reverse, vacate, modify, or nullify the foreclosure judgment entered June 11, 2018 in U.S. Bank National Association v. Schneider, Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. SWC-F-033348-16 / F-033348-16.

3. Plaintiffs likewise do not seek a federal determination that the foreclosure plaintiff lacked standing, that the state-court default determination was incorrect, or that any recorded instrument extinguished the lien enforced through the state judgment.

4. This action is limited to an independently arising 2026 mortgage-servicing claim under the Real Estate Settlement Procedures Act ("RESPA") and Regulation X.

5. Specifically, Plaintiffs allege that Wells Fargo received and reviewed a new loss-mitigation submission in September 2026, but failed to provide the written acknowledgment and complete-or-incomplete determination required by 12 C.F.R. § 1024.41(b)(2).

6. Plaintiffs do not seek an order requiring Wells Fargo to offer or approve any particular loss-mitigation option.

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert a claim enforceable under RESPA, 12 U.S.C. § 2605(f), and Regulation X, 12 C.F.R. § 1024.41(a) and (b)(2).

8. Venue is proper in this District under 28 U.S.C. § 1391 because the mortgage loan is secured by residential real property located in Mercer County, New Jersey, and a substantial part of the servicing conduct and resulting consequences concerns that New Jersey mortgage loan and property.

## III. PARTIES

9. Plaintiffs Barry L. Schneider and Allison M. Schneider are the borrowers and mortgagors identified by Wells Fargo in its 2026 servicing correspondence concerning loan 0533185088.

10. Defendant Wells Fargo Bank, N.A., acting through Wells Fargo Home Mortgage, serviced loan 0533185088 during the events giving rise to this action.

11. Wells Fargo's September 8, 2026 correspondence identified Wells Fargo Home Mortgage as the account servicer.

12. Wells Fargo's November 24, 2026 investigative response likewise stated that Wells Fargo remained the account servicer and that servicing was scheduled to transfer to Shellpoint Mortgage Servicing effective December 1, 2026.

## IV. LIMITED FORECLOSURE AND SERVICING BACKGROUND

13. A mortgage-foreclosure action concerning the property was commenced in December 2016 in the Superior Court of New Jersey, Chancery Division, Mercer County.

14. The foreclosure complaint pleaded a 2016 Mortgage Modification Agreement that allegedly established, among other terms, a four-percent interest rate, an April 1, 2056 maturity date, and a modified monthly payment beginning May 1, 2016.

15. A diligent-inquiry certification filed with the foreclosure complaint identified Wells Fargo Bank, N.A. as the servicer acting on behalf of the foreclosure plaintiff.

16. The state court entered final judgment on June 11, 2018. The state matter thereafter involved post-judgment enforcement and motion activity.

17. Plaintiffs acknowledge the existence of the state judgment. The foregoing allegations are included only as background, to identify Wells Fargo's servicing role, and to establish the chronology necessary to distinguish the 2026 servicing claim from issues adjudicated in state court.

## V. PRIOR LOSS-MITIGATION HISTORY IDENTIFIED BY WELLS FARGO

18. In its November 24, 2026 response, Wells Fargo stated that the account had undergone multiple payment-assistance reviews between March 2015 and June 2025.

19. Wells Fargo stated that the 2015 review resulted in a Loan Modification Trial Period Plan and that the account was removed from foreclosure after a Loan Modification Agreement became effective March 22, 2016.

20. Wells Fargo further stated that the account later entered default again and was referred to foreclosure a second time on November 23, 2016.

21. Accordingly, the loss-mitigation application resulting in the 2016 modification preceded the later default and delinquency underlying the renewed foreclosure referral.

22. Wells Fargo also stated that its most recent review before the events alleged here opened on May 1, 2025 and closed in June 2025 because requested financial documentation was not received.

23. Wells Fargo did not state that the 2025 review involved a complete loss-mitigation application for which it fully complied with § 1024.41.

24. Plaintiffs allege, based on Wells Fargo's own description, that the 2025 review closed as incomplete.

25. Plaintiffs have not identified any prior complete loss-mitigation application, submitted during the delinquency that continued after the 2016 modification, for which Wells Fargo previously complied fully with § 1024.41.

26. The existence, classification, and disposition of any prior application are reflected in Wells Fargo's servicing records and are matters on which Plaintiffs expect discovery.

## VI. AUGUST-SEPTEMBER 2026 LOSS-MITIGATION SUBMISSION

27. On August 25, 2026, Plaintiffs sought settlement review through Wells Fargo Home Preservation and copied foreclosure counsel.

28. Following further communications, foreclosure counsel advised Plaintiffs on August 31, 2026 that their negotiated settlement proposal had been rejected and provided a Wells Fargo Mortgage Assistance Package for loss-mitigation review.

29. Later on August 31, 2026, Plaintiffs advised counsel in writing: "The Mortgage Assistance Package has been completed and transmitted to Wells Fargo Document Management."

30. Plaintiffs thereafter mailed the Mortgage Assistance Package directly to Wells Fargo at the submission address provided for that purpose.

31. USPS tracking number 9505515891246243433755 reflects delivery to the designated Minneapolis, Minnesota post-office box at 6:36 a.m. on September 2, 2026.

32. Plaintiffs' contemporaneous correspondence identified the submission as a completed Mortgage Assistance Package and provided foreclosure counsel with the tracking information.

33. Plaintiffs do not presently possess a complete duplicate of the physical package delivered September 2, 2026 and therefore do not allege from recollection alone that every item required by Wells Fargo for a complete loss-mitigation application was included.

34. Whether the submission was complete or incomplete did not eliminate Wells Fargo's obligation to review the submission for completeness and provide the written notice prescribed by § 1024.41(b)(2), provided that provision otherwise applied.

35. No foreclosure sale was scheduled when Wells Fargo received the September 2 submission.

36. Wells Fargo later stated in its November 24, 2026 response that no foreclosure sale was scheduled as of that response.

## VII. WELLS FARGO'S SEPTEMBER 8, 2026 DETERMINATION

37. On September 8, 2026, Wells Fargo Home Mortgage issued a written notice concerning loan 0533185088 and 6 Barnsdale Drive under the heading "We've reviewed your request for assistance."

38. Wells Fargo stated: "You recently sent us information, which we reviewed with your mortgage's current standing and history."

39. Wells Fargo then stated that it had determined that the account was "not eligible to be reviewed for assistance."

40. The September 8 letter further stated that if the mortgage had been or would be referred to foreclosure, "that process will continue."

41. The September 8 letter did not state that Wells Fargo had determined the application to be complete.

42. The September 8 letter did not state that Wells Fargo had determined the application to be incomplete.

43. The letter did not identify any additional document or information Plaintiffs were required to submit to complete the application.

44. The letter did not provide a reasonable deadline by which Plaintiffs could submit any allegedly missing materials.

45. The letter did not state that § 1024.41 was inapplicable because Wells Fargo had previously complied with that regulation for a complete application submitted during the same continuous delinquency.

46. The letter instead communicated that Wells Fargo had reviewed Plaintiffs' information and had determined that the account was not eligible even to be reviewed for assistance.

## VIII. SUBSEQUENT CONFIRMATIONS AND NOTICE

47. On September 14, 2026, foreclosure counsel Brian Yoder stated in writing that Plaintiffs had sent the completed Mortgage Assistance Package directly to Wells Fargo rather than to foreclosure counsel.

48. Yoder further stated: "Wells Fargo has reviewed the information you sent to them" and identified the September 8 notice as Wells Fargo's resulting determination.

49. On October 28, 2026, Yoder again distinguished Plaintiffs' negotiated settlement demand from their loss-mitigation submission and referred separately to the client's prior denial of Plaintiffs' "requested settlement demand and loss mitigation application."

50. Plaintiffs also notified Wells Fargo through CFPB complaints of their loss-mitigation and servicing concerns.

51. Plaintiffs plead the CFPB communications only as evidence of notice, chronology, investigation, and Wells Fargo's stated positions. Plaintiffs do not allege that the CFPB adjudicated a statutory violation.

## IX. WELLS FARGO'S NOVEMBER 24, 2026 INVESTIGATIVE RESPONSE

52. On November 24, 2026, after receiving multiple CFPB complaints concerning loan 0533185088, Wells Fargo issued an eight-page consolidated response through its Enterprise Complaints Management Office.

53. The November 24 response stated that Wells Fargo had examined the account's payment-assistance history.

54. Wells Fargo identified reviews occurring from March 2015 through June 2025, including the review opened May 1, 2025 and closed in June 2025 for lack of requested financial documentation.

55. The response did not identify the September 2, 2026 Mortgage Assistance Package as having been acknowledged as either complete or incomplete under § 1024.41(b)(2).

56. The response did not identify a separate five-business-day acknowledgment issued after receipt of the September 2 submission.

57. The response did not identify any written notice informing Plaintiffs that the September 2 submission was incomplete, specifying the additional material needed, and providing a reasonable completion deadline.

58. The response did not state that Wells Fargo had previously complied with § 1024.41 for a complete application submitted during the same continuous delinquency and that § 1024.41(i) therefore excused further compliance.

59. The response instead stated generally that Wells Fargo had found no errors in prior payment-assistance reviews and that no corrections were required.

60. The November 24 response demonstrates that Wells Fargo had additional notice of the loss-mitigation dispute and access to the servicing records necessary to determine how the September 2026 submission was received, classified, reviewed, and resolved.

61. Nevertheless, Wells Fargo did not identify a § 1024.41(b)(2)-compliant acknowledgment or explain why no such acknowledgment was required.

**X. COUNT I - RESPA / REGULATION X LOSS-MITIGATION PROCEDURES**
**12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41(b)(2)**

62. Plaintiffs incorporate Paragraphs 1 through 61.

63. Wells Fargo received Plaintiffs' loss-mitigation application no later than September 2, 2026.

64. Wells Fargo and its foreclosure counsel subsequently acknowledged that Wells Fargo received and reviewed information submitted by Plaintiffs and that the September 8 letter resulted from that review.

65. Because no foreclosure sale was scheduled when Wells Fargo received the application, the application was required, under the CFPB's official interpretation, to be treated for purposes of § 1024.41(b)(2) as having been received at least 45 days before a foreclosure sale.

66. Under § 1024.41(b)(2), Wells Fargo was required promptly to review the application for completeness and, within five days excluding legal public holidays, Saturdays, and Sundays, notify Plaintiffs in writing that it had received the application and determined it to be either complete or incomplete.

67. If the application was incomplete, the notice was required to identify the additional documents and information necessary to complete it and provide a reasonable completion date.

68. The September 8 letter did not provide the required complete-or-incomplete determination.

69. The September 8 letter did not identify additional documents or information necessary to complete the application.

70. The September 8 letter did not provide Plaintiffs with a reasonable deadline to cure any asserted incompleteness.

71. Wells Fargo instead stated that it had reviewed Plaintiffs' information and that the account was "not eligible to be reviewed for assistance."

72. On the presently available record, § 1024.41(i) did not excuse compliance because: (a) the application resulting in the March 2016 modification preceded the later default and delinquency; (b) Wells Fargo's 2025 review closed for lack of requested documentation and was therefore described by Wells Fargo as incomplete; and (c) Wells Fargo has not identified a prior complete application submitted during the same continuous delinquency for which it previously complied fully with § 1024.41.

73. Alternatively, if Wells Fargo contends that § 1024.41(i) excused compliance, the identity, date, completeness status, evaluation, and regulatory disposition of the alleged prior application are uniquely reflected in Wells Fargo's servicing records and are expected to receive evidentiary support through discovery.

74. Plaintiffs do not allege that § 1024.41 required Wells Fargo to offer or approve any particular modification, settlement, principal reduction, short payoff, or other loss-mitigation option.

75. Plaintiffs allege that Wells Fargo violated the procedural requirements of § 1024.41(b)(2) by failing to provide the prescribed acknowledgment and complete-or-incomplete determination.

76. As a direct result of the alleged procedural violation, Plaintiffs incurred actual damages within the meaning of 12 U.S.C. § 2605(f)(1)(A).

77. The actual damages claimed include reasonable out-of-pocket expenses incurred after the September 8, 2026 determination for postage, printing, copying, obtaining and preserving servicing records, and transmitting follow-up communications undertaken to determine the status of the September 2026 application and to obtain or clarify the notice required by Regulation X.

78. Plaintiffs allege that those post-determination expenses were incurred as a result of Wells Fargo's failure to provide a complete-or-incomplete determination identifying the application status and any information needed to complete the application.

79. The amount of Plaintiffs' actual damages is presently unliquidated and will be established through receipts, account and correspondence records, and testimony. Plaintiffs demand damages generally and do not plead a fixed dollar amount.

80. Plaintiffs do not seek as actual damages the expense of preparing or filing this action, and they will not seek recovery for any expenditure that cannot be shown to have resulted from the alleged servicing violation.

81. Plaintiffs seek additional statutory damages under 12 U.S.C. § 2605(f)(1)(B) only if the evidence establishes a pattern or practice of noncompliance.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Wells Fargo Bank, N.A. as follows:

**A.** Actual damages according to proof under 12 U.S.C. § 2605(f);

**B.** Additional statutory damages only if Plaintiffs establish the statutory prerequisites under 12 U.S.C. § 2605(f)(1)(B);

**C.** Recoverable costs under 12 U.S.C. § 2605(f);

**D.** Prejudgment and post-judgment interest to the extent authorized by law; and

**E.** Such other relief as the Court lawfully determines appropriate, provided that such relief does not invalidate, reverse, modify, or impair the June 11, 2018 state-court judgment.

## XII. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 24, 2026

Respectfully submitted,

**/s/ Barry L. Schneider**
Barry L. Schneider, Pro Se
2025 Cleveland Avenue, Apt. 1205
Charlotte, NC 28203
barry.l.schneider@icloud.com
609-937-1988

**/s/ Allison M. Schneider**
Allison M. Schneider, Pro Se
2025 Cleveland Avenue, Apt. 1205
Charlotte, NC 28203
allisons_krew@yahoo.com
551-208-3924